**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**v.**                                          **Criminal Action No. 1:14-cr-41**

**THOMAS CUETO,**
          **Defendant.**

## OPINION/REPORT AND RECOMMENDATION
## CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for

purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11.  Defendant,

Thomas Cueto, in person and by counsel, Stephen Jory, appeared before me on, 2014.  The

Government appeared by Assistant United States Attorney Andrew Cogar.  The Court determined

that Defendant was prepared to enter a plea of "Guilty" to Count One of the Indictment.

The Court proceeded with the Rule 11 proceeding by first placing Defendant under oath.

The Court  inquired of Defendant whether he was a citizen of the United States.  Defendant

responded that he is a citizen.  The undersigned asked Defendant whether he understood that if he

were not a citizen of the United States, by pleading guilty to a felony charge he would be subject to

deportation at the conclusion of any sentence; that he would be denied future entry into the United

States; and that he would be denied citizenship if he ever applied for it.  Defendant stated that he

understood.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and

asked the Government to tender the original to the Court.  The Court asked if the agreement was the

sole agreement offered to Defendant.  Counsel for Defendant responded that a prior agreement had

contained a waiver of appellate rights as to any sentence within the statutory maximum penalty.

Counsel for Defendant requested, and the Government agreed, that such provision be changed to a

waiver of appellate rights regarding any sentence corresponding to a total offense level of 17. Counsel for Defendant indicated that he had discussed both the prior and the instant plea agreement with Defendant. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with his understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed and made part of the record.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear his plea and voluntarily consented to the undersigned Magistrate Judge hearing his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Thomas Cueto, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count One of the Indictment and the elements the Government would have to prove, charging him with theft of government funds, in violation of 18 U.S.C. § 641. The undersigned then reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charges contained in Count One of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charges pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on Count One was imprisonment for a term of not more than ten (10) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of at least three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. Defendant also understood that his sentence could be increased if he had prior criminal history including but not limited to a prior firearm offense, violent felony conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release. Furthermore, Defendant understood that mandatory restitution pursuant to 18 U.S.C. § 3663A was required in this matter, and he agreed to make such restitution.

The undersigned also reviewed with Defendant his waiver of appellate rights as follows:

Ct:     Did you and Mr. Jory discuss that under 18 U.S.C. § 3742, you have a right to appeal your conviction and sentence by filing notice of appeal to the Fourth Circuit Court of Appeals within 14 days from when you are sentenced?

Def.    Yes, Your Honor.

Ct.    Did you and Mr. Jory talk about that you may under 28 U.S.C. § 2255 file a motion collaterally attacking or challenging your sentence and how that sentence is being executed or carried out?

Def.    Yes, Your Honor.

Ct.    In your written plea agreement, and if you would turn to paragraph 18, did you fully read and understand paragraph 18 of your plea agreement?

Def.    Yes, Your Honor.

Ct.    Did you fully discuss the import of that paragraph with Mr. Jory?

Def.    Yes, Your Honor.

Ct.    From your discussion then do you understand that if the District Judge imposes an actual sentence which is the same as or equal to a Guideline–advisory Guidelines sentence that has a total offense level of 17 or lower, then you give up your right to directly appeal that sentence to the Fourth Circuit Court of Appeals, is that correct?

Def.    That's correct, Your Honor.

Ct.    You intended to give up that valuable right of direct appeal as specifically set forth under the conditions of paragraph 18 of your plea agreement?

Def.    Yes, Your Honor.

Ct.    Did you understand from your discussions with Mr. Jory that total offense level under the advisory Guidelines means the total offense level after all adjustments have been made, up or down?

Def.    Yes, Your Honor.

Ct.     Did you understand that  paragraph is not a guarantee to you that your actual sentence will

        in fact be the same as a Guidelines sentence which has a total offense level of 17 or lower?

Def.    Yes, Your Honor.

        From the foregoing colloquy the undersigned determined that Defendant understood his

appellate rights and knowingly gave up those rights pursuant to the condition contained in the

written plea agreement.

        The undersigned Magistrate Judge further examined Defendant relative to his

knowledgeable and voluntary execution of the written plea bargain agreement, and determined the

entry into said written plea bargain agreement was both knowledgeable and voluntary on the part

of Defendant.  The undersigned then inquired of Defendant regarding his understanding of the

written plea agreement.  Defendant stated he understood the terms of the written plea agreement and

also stated that it contained the whole of his agreement with the Government and no promises or

representations were made to him by the Government other than those terms contained in the written

plea agreement.

        The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the

Government as to the non-binding recommendations and stipulation contained in the written plea

bargain agreement and determined that Defendant understood, with respect to the plea bargain

agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count One

of the Indictment, the undersigned Magistrate Judge would write the subject Report and

Recommendation and would further order a pre-sentence investigation report be prepared by the

probation officer attending the District Court. The undersigned advised the Defendant that the

District Judge would adjudicate the Defendant guilty of the felony charged under Count One of the

Indictment.  Only after the District Court had an opportunity to review the pre-sentence investigation

report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea. Defendant further stated his attorney showed him how the advisory guideline chart worked but did not promise him any specific sentence at the time of sentencing. Defendant stated that he understood his attorney could not predict or promise him what actual sentence he would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The Court would generally hear the testimony of a Government witness at this point in the hearing to support an independent basis in fact for the guilty plea. However, in this case, the parties

agreed on the record that the Government would make a proffer to provide that independent basis in fact. The Government proffered that the investigation into this matter began in October 2012 and was prompted by an anonymous complaint that Defendant had falsified his DD-214 discharge papers in order to receive PTSD benefits from the Veterans' Administration ("VA"). Defendant had served in the United States Army from 1969 until 1972; during that time, he was stationed in Vietnam. After being discharged from the Army, Defendant attended college in West Virginia and became a West Virginia State Trooper in 1976. He retired in 1987 after being found to have a partially disabling condition.

In 1996, Defendant submitted an application for PTSD benefits to the VA. In that application, he submitted a DD-214 indicating that he had received the following awards: the Combat Infantry Badge, the Bronze Star, the Purple Heart, and the Vietnamese Cross of Gallantry. However, on July 5, 1972, Defendant had submitted a DD-214 to the VA in order to obtain education benefits. That DD-214 indicated that Defendant had not received those awards. In 1976, Defendant had submitted a DD-214 to the West Virginia Department of Public Safety as part of his application to be a state trooper. That DD-214 also indicated that Defendant had not received those awards. In addition to the falsified DD-214, Defendant also submitted a Purple Heart certificate, which VA forensics examiners determined was counterfeit. Defendant also submitted letters from fellow servicemembers. Those servicemembers were later interviewed by VA agents. They indicated that they did not have firsthand knowledge of Defendant receiving any combat injuries. Some denied writing the letters, and one advised that the signature on the letter purportedly written by him had been forged. That service member indicated that he and Defendant had never experienced conflict and had not been stationed in a danger zone in Vietnam. The VA relied on the

fraudulent documents to award PTSD benefits to Defendant on May 17, 1999. Since then, Defendant has received over $500,000 in PTSD benefits. All activity occurred while Defendant was a resident of Bridgeport, West Virginia, within the Northern District of West Virginia.

Defendant stated he heard, understood, and did not disagree with the Government's proffer.

Thereupon, Defendant, Thomas Cueto, with the consent of his counsel, Stephen Jory, proceeded to enter a verbal plea of **GUILTY** to the felony charge in Count One of the Indictment.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count One of the Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed for Count One; Defendant made a knowing and voluntary plea of guilty to Count One of the Indictment; and Defendant's plea is independently supported by the Government's proffer which provides, beyond a reasonable doubt, proof of each of the essential elements of the charges to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **RECOMMENDS** Defendant's plea of guilty to Count One of the Indictment herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is released pursuant to the Order Setting Conditions of Release previously entered in this case.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 2nd day of September, 2014.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE